UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ESSENCE FRANCIS,

      **Plaintiff,**

v.                                                                                **Civil Action 2:23-cv-2658**
                                                                         **Judge Edmund A. Sargus, Jr.**
                                                                         **Magistrate Judge Chelsey M. Vascura**

**CHERRI FRENCH,** *et al.***,**

      **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

    Plaintiff, Essence Francis, an Ohio resident proceeding without the assistance of counsel, has submitted a request to file a civil action *in forma pauperis*. (ECF Nos. 1, 3.) The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

    This matter is also before the Court for the initial screen of Plaintiff's Complaint as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, Plaintiff **MAY PROCEED** on her claim for discrimination on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") against Defendant The Laurels of Athens, but it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's remaining claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

## I. BACKGROUND

Plaintiff's Complaint (ECF Nos. 1-1, 1-2) alleges the following facts. Plaintiff was employed by Defendant The Laurels of Athens, a nursing home. In July 2023, Plaintiff's grandfather was admitted as a resident of the Laurels. On several occasions, other nurses and aids called Plaintiff to come in and sit with her grandfather as he was "uncontrollable" due to his Parkinson's symptoms. Plaintiff asked whether she would be paid for this time and was told no, but felt she had to come in because Plaintiff could see that other employees were illegally restraining her grandfather while on video chat. Plaintiff sat with her grandfather for three days without being paid. Plaintiff and her mother were also concerned with the level of care being provided to Plaintiff's grandfather, and Plaintiff's mother expressed her concerns of neglect and abuse to administrators at the Laurels.

On August 5, 2023, Plaintiff and her mother were visiting Plaintiff's grandfather and noticed he smelled of urine. Based on comments from two Laurels aides who came to assist, Plaintiff was concerned that her grandfather had been wet all day long. While transitioning Plaintiff's grandfather from a wheelchair onto the bed, the two aides threw him onto the bed where he yelped in pain. One of the aides and Plaintiff's mother then engaged in a physical altercation, and Plaintiff and her mother again complained of neglect and abuse perpetrated by Laurels employees. Defendant Cherri French, an administrator of the Laurels, agreed that Plaintiff's grandfather does not deserve to be treated like this and stated she would make sure that he was taken care of for the night.

Defendant Layla Coll, another aide employed by the Laurels, then engaged in a screaming match with Plaintiff's mother. Ms. Coll then initiated a physical altercation with Plaintiff and Plaintiff's mother. Plaintiff's mother called 911, and Defendant police officers Justin Boggs, Brandon Stalnaker, and James Marcinko of the Athens City Police were dispatched

to the Laurels. The officers viewed Plaintiff's mother's video of the verbal and physical altercations and spoke to other Laurels employees. The officers then arrested Plaintiff and charged her with assault. Ms. Coll was not arrested or charged.

On August 7, 2023, Defendant Stephanie Cleland, an administrator at the Laurels, called Plaintiff to tell her that she and all aides involved in the August 5 incident were being suspended until further notice. On August 14, 2023, Plaintiff's employment with the Laurels was terminated purportedly due to violation of company policies on workplace violence, even though Plaintiff maintains she acted only in self-defense. Plaintiff alleges her termination was motivated by her race, as she is black, and Ms. Coll is white and was not terminated. Plaintiff also believes her termination was motivated due to her and her mother's complaints of neglect and abuse.

Plaintiff's Complaint refers to claims of racial employment discrimination, equal pay discrimination, unreasonable seizure and false arrest in violation of the Fourth Amendment, failure to intervene to protect her constitutional rights, and violations of 18 U.S.C. §§ 242 and 1513. As relief, Plaintiff seeks compensatory, punitive, and emotional distress damages, job reinstatement, attorney's fees, expungement of her criminal record, the ability to press criminal charges against Ms. Coll and the Defendant police officers, and the ability to submit a complaint for elder abuse against the Laurels.

## II. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). See also *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain

4

sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ANALYSIS

The undersigned construes Plaintiff's Complaint to advance the following claims: (1) racial discrimination in violation of Title VII against the Laurels, (2) violation of the Equal Pay Act against the Laurels, (3) unreasonable seizure and/or false arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983 against the Defendant police officers, (4) failure to intervene to protect Plaintiff's constitutional rights under 42. U.S.C. § 1983 against the Defendant police officers, and (5) violations of criminal statutes, 18 U.S.C. §§ 242 and 1513, against the Defendant police officers. The undersigned concludes that Plaintiff **MAY PROCEED** on her claim for racial discrimination under Title VII against the Laurels, but **RECOMMENDS** that Plaintiff's remaining claims be dismissed for the following reasons.

A. **Equal Pay Act**

Under the Equal Pay Act ("EPA"), an employer is prohibited from paying an employee less than another "on the basis of sex" for "equal work." 29 U.S.C. 206(d)(1). Equal work is

defined by the EPA as jobs that require "equal skills, effort, and responsibility" and "are performed under similar working conditions." *Id.* Plaintiff's Complaint is devoid of any allegations that she was paid less than another employee "on the basis of sex." She alleges only that she was not paid for three days that she spent sitting with her grandfather. Moreover, Plaintiff does not allege that any other employee, irrespective of sex, was paid for performing work "equal" to Plaintiff's sitting with her grandfather. It is therefore **RECOMMENDED** that Plaintiff's EPA claim be **DISMISSED**.

**B.    Fourth Amendment Unreasonable Seizure and/or False Arrest**

To sustain a claim for either unreasonable seizure or false arrest in violation of the Fourth Amendment, Plaintiff must establish that the arresting officers lacked probable cause for the arrest. *See*, *e.g.*, *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008) (unreasonable seizure); *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (false arrest). "In order to determine whether an arrest was supported by probable cause, we must determine whether, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *Torres-Ramos* at 555 (cleaned up). Here, Plaintiff's allegations do not demonstrate that the arresting officers lacked probable cause. She alleges that the arresting officers viewed Plaintiff's mother's video of the physical altercations with Ms. Coll and spoke to other Laurels employees before arresting Plaintiff. Plaintiff does not describe her part in the physical altercations beyond noting that "I was assaulted first." (Compl., ECF No. 1-1, PAGEID #8.) This statement implies that even if Ms. Coll initiated the physical altercation, Plaintiff responded with violence and that the officers would have seen as much on the video recording. Plaintiff's allegations do not provide sufficient factual information to allow the undersigned to conclude that the Defendant police

officers lacked probable cause to arrest Plaintiff for assault. Accordingly, it is

**RECOMMENDED** that Plaintiff's Fourth Amendment claims be **DISMISSED**.

**C.     Failure to Intervene**

Plaintiff's Complaint makes a passing reference to "failure to intervene" under 42 U.S.C. § 1983 and correctly notes that "[w]hen a law enforcement officer uses excessive force or engages in other prohibited conduct, other officers on the scene have a duty to stop such action." (Compl., ECF No. 1-1, PAGEID #8.) *See, e.g.*, *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). However, Plaintiff does not explain what conduct by any law enforcement officers might have constituted a failure to intervene. Presumably the "prohibited conduct" in question is the Defendant police officers' allegedly unconstitutional arrest of Plaintiff. But any general allegations of failure to intervene appear to be contradicted by her express allegations that all three Defendant police officers participated in her arrest. (*See id.* at PAGEID #10) ("all three officers walked in my grandfather's room and placed me under arrest"). Logically, Defendants could not have failed to intervene in their own conduct, and the officers' affirmative actions are better analyzed as part of Plaintiff's Fourth Amendment claims. Accordingly, it is

**RECOMMENDED** that Plaintiff's claims for failure to intervene be **DISMISSED**.

**D.     Criminal Statutes**

Plaintiff further alleges that the Defendant police officers' actions constitute deprivation of rights under color of law and retaliation against a witness, victim, or informant in violation of 18 U.S.C. 242 and 1513, respectively. However, these are criminal statutes that do not provide Plaintiff with a private cause of action. *See, e.g.*, *Booth v. Henson*, 290 F. App'x 919, 920–21 (6th Cir. 2008) (no private right of action under § 242); *Giebell v. Heartland Dublin Nursing Facility*, No. 20-4226, 2021 WL 5917779, at *3 (6th Cir. July 28, 2021) (no private right of

action under § 1513). Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims under these statutes.

**E.     Remaining Defendants**

Plaintiff's Complaint also names Layla Coll, Stephanie Cleland, and Cherri French as Defendants, but does not specify what claims she advances against them. To the extent Plaintiff seeks to hold any of these individuals liable under Title VII arising out of her suspension or termination, "Title VII does not impose liability on supervisory personnel." *Harper v. City of Cleveland*, 781 F. App'x 389, 393 (6th Cir. 2019) (citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997)). Nor do the factual allegations involving each of these individuals relate to any of the other causes of action that Plaintiff references in her Complaint. As part of her prayer for relief, Plaintiff seeks permission to file criminal charges against Ms. Coll, but she does not appear to advance any civil claims against Ms. Coll that would plausibly be encompassed by this action. Accordingly, it is **RECOMMENDED** that all claims against Defendants Layla Coll, Stephanie Cleland, and Cherri French be **DISMISSED**.

**IV.     DISPOSITION**

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (ECF Nos. 1, 3) is **GRANTED**. Plaintiff **MAY PROCEED** on her Title VII race discrimination claim against the Laurels, but it is **RECOMMENDED** that Plaintiff's remaining claims be dismissed for failure to state a claim under § 1915(e)(2).

Plaintiff has already requested issuance of a summons to Defendant The Laurels of Athens. (ECF No. 1-5, PAGEID #30.) If Plaintiff wishes to have the United States Marshal effect service of process over Defendant The Laurels of Athens as to her Title VII claim, Plaintiff is **DIRECTED** to submit a service of process by U.S. Marshal form (Form USM-285). Once the Clerk is in receipt of the required forms, the Clerk is **DIRECTED** to issue the

summons, and the United States Marshal is **DIRECTED** to serve by certified mail upon Defendant The Laurels of Athens the issued summons, a copy of the Complaint (ECF Nos. 1-1, 1-2), and a copy of this Order and Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE